SO ORDERED: May 28, 2008.

_____
**Basil H. Lorch III
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Terry Lee Garoutte, | ) | Case No. 07-70720-BHL-7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| DAMAX, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. 07-57218 |
| | ) | |
| Terry Lee Garoutte, | ) | |
| | ) | |
| Defendant. | ) | |

## JUDGMENT

This matter comes before the Court on **Plaintiff's Motion for Summary Judgment and Brief in Support**, filed by DAMAX, Inc. (hereinafter "DAMAX") on January 21, 2008.

Defendant, Terry Garoutte (hereinafter "Garoutte"), filed his **Response in Opposition to Motion**

1

**for Summary Judgment** and his brief in support thereof on March 19, 2008.  DAMAX then filed a **Reply to Defendant's Opposition to Motion for Summary Judgment and Brief in Support of Reply** on April 1, 2008.  Having been fully briefed, the Court took the matter under advisement.

Having considered the foregoing, and for the reasons set forth below, the Court finds that the **Plaintiff's Motion for Summary Judgment  and Brief in Support** should be, and hereby is, **GRANTED**.

## Background Facts

This Court adopts the findings of fact of the Elkhart Superior Court No. 1, as follows:

Hawkeye Charter Service, Inc. ("Hawkeye") conducted charter flights.  Mark C. Shea ("Shea") was a customer of Hawkeye.  Garoutte was the president of Hawkeye.  At some point Shea indicated to Garoutte that Shea would be interested in purchasing a small aircraft and begin offering chartered flight services.  Garoutte contacted Shayne Koons ("Koons") with whom Garoutte had been acquainted through an earlier aircraft sales transaction.  Koons was acquainted with Gil Holt ("Holt") who was a pilot employed by Damax.  Holt informed Koons that Damax was interested in selling a 1972 Swearingen Merlin III airplane ("the Merlin").  Koons and Garoutte informed Shea of availability (sic) of the Merlin.

Arrangements were made to fly the Merlin first to Elkhart Indiana then on to Toledo, Ohio to National for an engine inspection.  National determined that the Merlin required a hot section repair on one of its engines.  Holt and Garoutte flew the Merlin back to Elkhart so that the pre-purchase inspection could be completed and Shea could view the Merlin.

While conducting the pre-purchase inspection, Hawkeye discovered a fuel leak.  Garoutte informed Shea that the cost for the engine and fuel cell repairs would be approximately One Hundred Ten Thousand ($110,000.00) Dollars.  Garoutte requested that Damax reduce the Merlin's asking price to reflect the needed repairs.  Damax agreed and reduced the price to Five Hundred Fifty Thousand ($550,000.00) Dollars with the condition that the Merlin was to be sold in "as is" condition.  On November 22, 2000, Damax and Garouette executed a sales agreement reflecting the reduction in price as well as Sixty Thousand ($60,000.00) Dollars payable to Koons and Garoutte as commission.  The sales agreement provided, inter alia, that should the transaction not be completed, the Merlin

> would be returned to Damax in the pre-purchase condition.  The sales agreement also required that Sixty Five Thousand ($65,000.00) Dollars be paid into escrow.
>
> On November 27, 2000 Shea advised Garoutte that he had secured financing for the purchase of the Merlin and instructed Garoutte to proceed with the repairs.  Garoutte made arrangements for the repairs to begin, which resulted in the disassembly of the Merlin.  After learning of the state of the Merlin, G. Michael Solomon, counsel for Damax, sent several letters inquiring as to the status of the Merlin.  Eventually, on February 22, 2001, Shea and Garoutte memorialized their prior oral agreement regarding the purchase of the Merlin.  Sometime after  the (sic) Garoutte and Shea signed this agreement, Shea's financing fell through.  On April 27, 2001, local counsel for Damax sent a demand letter to Garoutte and Hawkeye demanding the return of the Merlin in a fully assembled, air-worthy condition.  The Merlin was not returned ....

*Ex. 2 to Pl's Mot. For Summ. J. and Br. in Supp.*, p. 2-3.  Based upon these facts, the Honorable Evan S. Roberts of the Elkhart Superior Court No. 1 awarded DAMAX a civil judgment against Garoutte, personally, in the amount of $2,802,734.80, finding him guilty of criminal conversion under I.C. § 35-34-4-3.  That decision was appealed to the Indiana Court of Appeals and affirmed by order dated May 19, 2008.

Garoutte sought relief under chapter 7 of the bankruptcy code on June 8, 2007, and listed the judgment against him on Schedule F of his petition.  DAMAX now seeks to have the judgment debt declared non-dischargeable pursuant to 11 U.S.C § 523(a)(2)(A) or 523(a)(6).

## Memorandum

Summary judgment is mandated where there are no disputed issues of material fact and the movant must prevail as a matter of law.  *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994).  The moving party bears the initial burden of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

3

317, 323 (1986). Once the moving party presents a *prima facie* showing that he is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings but must affirmatively show that there is a genuine issue of material fact for trial. *Andeson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex*, 477 U.S. at 323; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When reviewing facts in support of a motion for summary judgment, a court must construe all facts in the light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-American, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). The court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but rather to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249.

In the present matter, the Elkhart Superior Court found that the actions of Garouette amounted to a criminal conversion of DAMAX's property in violation of I.C. § 35-43-4-3, and awarded a judgment in DAMAX's favor in the amount of $2,802,734.80. DAMAX now seeks to have that judgment debt excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(a) or 523(a)(6). In so doing, DAMAX asserts that collateral estoppel prevents Garouette from relitigating the facts that led to the judgment against him in state court.

The doctrine of collateral estoppel provides that a prior judgment on the identical issue between the same parties in a different cause of action acts as a bar to relitigating that issue in a subsequent action. The Full Faith and Credit Clause of the United States Constitution provides that federal courts are to accord state court judgments such weight as would be applied in the courts of the state in which the judgment was rendered. Art. IV, section 1 U.S. Constitution.

Thus, the application of collateral estoppel is appropriate in bankruptcy proceedings as long as "the state litigation actually and necessarily decided the relevant issue." *Klingman v. Levinson*, 831 F. 2d 1292, 1295 (7th Cir. 1987).  The Court in *Klingman* stated:

> Where a state court determines factual questions using the same standards as the bankruptcy court would use, collateral estoppel should be applied to promote judicial economy by encouraging the parties to present their strongest arguments....  Thus, if requirements for applying collateral estoppel have been satisfied, then that doctrine should apply to bar relitigation of an issue determined by a state court.

*Id.*

In order for the Court to give collateral estoppel effect to a prior judgment, the following elements must be met:

> 1) the issue sought to be precluded must be the same as that involved in the prior action; 2) the issue must have been actually litigated; 3) the determination of the issue must have been essential to the final judgment; and 4) the party against whom estoppel is invoked must be fully represented in the prior action.

*Havoco of America, Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F. 3d 303, 307-308 (7th Cir. 1995).  The party asserting collateral estoppel bears the burden of proving that each element is present.  *Id.*

### A. The Issue Sought to be Precluded is the Same as that Involved in a Prior Action

11 U.S.C. § 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."  A person is guilty of criminal conversion pursuant to I.C. § 35-43-4-3 when he/she "knowingly or intentionally exerts unauthorized control over property of another person."  DAMAX argues that collateral estoppel should not be applied here because the state court judge did not make a specific finding on the issue of "willful and malicious" behavior.  DAMAX's counsel then states that "[n]o reasonable person could conclude that 'knowingly or intentionally' has the same meaning as 'willful and

5

malicious' as said words are conceptually different and have different legal effect. In fact, the United States District Court for the Southern District of Indiana has said just that.

In *Lehman's Inc. of Anderson v. Hittle*, the District Court faced the following question:

> [W]hether liability for knowingly and intentionally exerting unauthorized control over a person's property is the equivalent of willful and malicious injury to another's property, so as to make Indiana's criminal conversion equivalent to an activity requiring that a debt be nondischargeable under 11 U.S.C. § 523(a)(6).

163 B.R. 814, 817 (S.D.Ind.,1994). The Court answered that question in the affirmative, finding that:

> "Willful" for the purposes of 11 U.S.C. § 523(a)(6) is generally understood to mean a deliberate or intentional act. *In re Long*, 774 F.2d 875, 880 (8th Cir.1985); *In re Compos*, 768 F.2d 1155, 1158 (10th Cir.1985); *In re Lampi*, 152 B.R. 543, 545 (C.D.Ill.1993). The fact that criminal conversion requires a means rea of knowing or intentional means that the "willful" prong of 11 U.S.C. § 523(a)(6) is satisfied.
>
> "Malicious" for the purposes of 11 U.S.C. § 523(a)(6) is more difficult to define, and is currently a matter of some confusion in the Seventh Circuit:
>
>> The meaning of 'malicious' is a subject of considerable conflict among lower courts as well as courts of appeals. Some courts have interpreted malicious to require an 'intent to do harm,' while others have applied an implied or constructive malice standard derived from *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). *See generally United Bank of Southgate v. Nelson*, 35 B.R.766, 770 (N.D.Ill.1983) (discussing split in authorities). This circuit has not taken a definitive stand on that question and it is unnecessary for us to reach that issue of first impression here.
>
> *In re Scarlata*, 979 F.2d 521, 526 (7th Cir.1992), *reh'g denied* (1993).
>
> While the Seventh Circuit did not reach the issue in *Scarlata*, other definitions were discussed. Lower courts had applied the "specific malice" standard, defining a malicious act as one which would "automatically or necessarily" cause injury o the creditor. *Id.* The creditor in *Scarlata* urged the Seventh Circuit to adopt the "implied malice" standard which defines a malicious act as "a deliberate and intentional act in which the debtor [proceeds] know[ing] his act [will] harm the creditor's interest...." *Id.* at 527 (quoting *United Bank of Southgate v. Nelson*, 35 B.R. 766, 776 (N.D.Ill.1983)).
>
> The Seventh Circuit reasoned that both definitions required proof that "the debtor took

the sort of actions that would 'automatically or necessarily' harm the creditor." *Id.* The Seventh Circuit concluded that the creditor had not explained why the lower courts had erred in using the "necessarily caused harm" standard, and upheld the application of that standard in the case. *Id.* at 528.

It is not necessary for this Court to determine the correct definition of malicious in this instance because the state court judgment would satisfy the "necessarily caused harm" standard. Where a person knowingly or intentionally exerts unauthorized control over another person's property, this action most certainly demonstrates a knowledge of necessary harm. Any element of mistake or excuse would prevent the control from being knowingly or intentionally unauthorized. That the control was knowingly or intentionally unauthorized leaves no question that it was malicious within the meaning of § 523(a)(6).

The first element of collateral estoppel is therefore present in this case.

*Hittle*, 163 B.R. at 817-818. Just as in *Hittle*, the first element of collateral estoppel is met in the present case.

### B. The Issue Must Have Been Actually Litigated

An issue which has been previously determined on a motion for summary judgment constitutes actual litigation. *In re Wien*, 155 B.R. 479, 486 (Bkrtcy.N.D.Ill.1993). However, in the present matter, Garoutte claims that he was prevented from submitting affidavits or briefs in his own defense prior to the judge ruling on DAMAX's motion for summary judgment. He claims that his counsel requested additional time to respond to Plaintiff's motion, but that his request was never ruled upon. Instead, the Court granted DAMAX's summary judgment motion.

In the Superior Court opinion dated February 27, 2006, Judge Roberts states in footnote 1:

After extensive review of the file and the court's chronological case summary, Garoutte, individually and on behalf of Hawkeye Charter Service, Inc. And without the benefit of counsel, filed the following documents on November 4, 2005: (1) Cross-Defendant's motion for summary judgment; (2) Brief in support of motion for summary judgment; (3) Designation of evidentiary matters relied upon for purposes of motions; (4) Defendant's motion to deny National's Summary Judgment; (5) Brief in support of motion to deny summary judgment and to remove Terry Garoutte as a Defendant; and (6) Designation of

evidentiary matters relied upon for purposes of motion.

*Ex. 2 to Pl's Mot. For Summ. J. and Br. in Supp.*, p.2, n.1. It is clear Garoutte did respond to DAMAX's motion for summary judgment, albeit without the assistance of counsel at that time. Counsel was retained and sought additional time to respond to DAMAX's motion, but Judge Roberts did not rule on that request before granting summary judgment in DAMAX's favor. He explained as follows:

> The court notes that this case has been pending since May 15, 2001, Defendants' Hawkeye and Garoutte have previously been represented by multiple attorneys throughout the litigation, Garoutte has represented himself and filed numerous pleadings herein and has had an ample period of time to address this litigation. Accordingly, the court denies Hawkeye and Garouttes' requests.

*Ex. 2 to Pl's Mot. For Summ. J. and Br. in Supp.*, p. 8. Based on the facts on record, and on Judge Roberts' explanations, this Court finds that the issue has been actually litigated and the second element of collateral estoppel has been met.

### C. The Determination of the Issue Must Have Been Essential to the Final Judgment

Having determined that the elements of criminal conversion determined that Garoutte "willfully and maliciously" took control of the aircraft, the Court finds that the third element of collateral estoppel has been met.

### D. The Party Against Whom Estoppel is Invoked Must Be Fully Represented in the Prior Action

The opinion of the Superior Court indicates that several motions and briefs were filed by Garoutte without counsel. However, the same opinion reflects the fact that Garoutte had five attorneys represent him at different times throughout the case. *Ex. 2 to Pl's Mot. For Summ. J. and Br. in Supp.*, p. 8, n.4. Accordingly, the Court finds that the fourth and final element of

8

collateral estoppel has been met, and thus the doctrine of collateral estoppel applies to the facts in this case.

By the application of the doctrine of collateral estoppel, Garoutte is prevented from relitigating the facts that led to the judgment against him. Consequently, there being no disputed issue of material fact before this Court, DAMAX is entitled to judgment as a matter of law. Accordingly, **Plaintiff's Motion for Summary Judgment and Brief in Support** should be, and hereby is, **GRANTED**.

# # #

Distribution to all counsel.